IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIANN T. MILLS | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  20-1272 |
| | : | |
| AFSCME DISTRICT COUNCIL 33, *et* | : | |
| *al.* | : | |

## MEMORANDUM

KEARNEY, J.                                                                            May 13, 2020

The City of Philadelphia promoted Briann T. Mills to a position of a Street Crew Chief subject to a six-month probationary period after almost four years of working as a laborer for the Sanitation Division of the Streets Department. The City then cited him three times in the first six weeks of probation in his new job for performance issues.  As a result, it terminated his promotion and returned him to his laborer position.  He attempted to grieve his rejection during probation, but the union refused to grieve on his behalf.  He now sues the City for depriving him of due process and equal protection after his three performance failures in the first six weeks of his probationary period.  Based on his judicial admissions and as a matter of law, he does not have a property interest in a probationary position in public employment requiring we dismiss his due process claims against the City with prejudice.  He also did not plead an equal protection claim. We grant the City's motion to dismiss but grant Mr. Mills leave to timely amend to plead claims not dismissed with prejudice including a potential equal protection claim not based on a class-of-one theory.

### I.      Alleged facts

Beginning in November 2014, the City of Philadelphia employed Briann T. Mills with the Sanitation Division of its Streets Department. Shortly before his fourth work anniversary, the

Department promoted Mr. Mills to the position of Streets Crew Chief II subject to a six-month probationary period.[1]

He began his first day of work in this probationary Crew Chief position on October 10, 2018.[2] Mr. Mills's probationary period in the position of Street Crew Chief II ran for six months, from October 10, 2018 to April 8, 2019.

On November 20, 2018, the Department's Area Chief Wanda Jones met with supervisors regarding cleanliness of recycling and improved documentation regarding disciplinary write-ups.[3] As of November 20, 2018, neither Ms. Jones, nor James Moore, Mr. Mills's immediate supervisor, issued a verbal or written warning for conduct to Mr. Mills.[4]

The City noted three performance issues over the first six weeks of his probationary tenure: on November 8 and November 17, 2018, he failed to pick up trash on two different streets and on November 21, 2018, the Streets Department's Quality Control Unit photographed Mr. Mills committing a safety violation by placing bags of trash in the middle of a divided highway.[5]

The City set two hearings to address Mr. Mills's three performance issues on November 8, 17, and 21. On November 29, 2018, Mr. Moore convened a hearing with Mr. Mills and District Council 33 Shop Stewards regarding the November 21, 2018 safety issue.[6] Mr. Moore recommended Mr. Mills receive a one-day suspension for the safety infraction to be served on December 6, 2018.[7] The City issued a formal notice of the one-day suspension.[8] Mr. Mills did not appeal the suspension.[9]

On December 3, 2018, Mr. Moore convened a second hearing with Mr. Mills and District Council 33 Shop Stewards on the charge of "failure to properly manage" regarding the November 8 and November 17, 2019 failure to pick up trash.[10] On December 4, 2019, Mr. Moore told Mr. Mills and two Shop Stewards he intended to recommend Mr. Mills be "rejected during probation"

for the Street Crew Chief II position.[11]   Mr. Moore cited the November 8 and 17 "failure to properly manage" incidents and the November 21, 2018 safety incident, as well as other performance issues, as the reason for the rejection during probation.[12] Mr. Moore signed the "rejection during probation" form on December 20, 2018.[13]

On January 3, 2019, the City formally notified Mr. Mills of losing his probationary position as Streets Crew Chief II and he could return to his previous position as a laborer.[14] The City specifically advised: "Mr. Mills, effective January 7, you have been rejected from your position as Street Crew Chief 2 and will return to your previous position as Laborer because of poor performance and failure to manage resources. You were counseled about your performance and were suspended on two occasions: December 6 because of a safety violation – putting bags and cans in the middle of a divided highway – and on December 12 because both sides of Stenton Avenue from Mt. Airy to Mr. Pleasant (November 17) as well as 500 block of Mayland Street (November 8) were left uncollected over the weekend. For these reasons, Mr. Mills, you will be restored to your previous position …."[15]

### The City's Civil Service Regulations.

Mr. Mills alleges the City's characterization of his demotion as a rejection during the probationary period under the City's Civil Service Regulations is arbitrary, capricious, in bad faith, inconsistent with the facts, deliberately indifferent to his property right in the Streets Crew Chief II position, and intended to harm and deprive him of his constitutionally protected rights.[16]

The City of Philadelphia's Civil Service Regulations implement the City's Home Rule Charter provisions "relating to the establishment and administration of a merit system by supplementing said provisions, which are generally broad in scope, with specific detail as

contained in policies and procedures covering the many and various phases of personnel administration."[17]  Relevant here are six sections of the Civil Service Regulations:

14.01 - APPOINTMENTS FROM ELIGIBLE LISTS.  *All persons appointed from open competitive, promotional or preferred eligible lists shall be subject to a probationary period of six (6) months*, except as may be otherwise provided in the Regulations.  *The period of probation is expressly understood to be part of the entrance or promotional examination or reinstatement and that the status of the appointee or reinstated employee as a permanent employee is not approved until successfully completing his/her period of probation*.[18]

14.04 - REJECTION OF EMPLOYEE DURING PROBATIONARY PERIOD.  *At any time during the probationary period*, the appointing authority, or his/her designated representative, with the approval of the Director, *may discharge or demote a probationary employee, if said appointing authority*, or his/her designated representative, *determine that such employee is unable or unwilling to perform his/her duties satisfactorily*, or that his/her habits and dependability do not merit his/her continuance in the City service or that information revealed during the pre-employment background investigation requires removing the employee from the position.  …[19]

14.042 - APPEAL RIGHTS OF REJECTED PROBATIONARY EMPLOYEE.  An employee who is rejected during the probationary period *does not have the right to appeal* to the Civil Service Commission against such action.[20]

15.042 - RESTORATION FOLLOWING REJECTION DURING PROBATIONARY PERIOD.  An employee with permanent Civil Service status in a class, who vacates a position in that class to accept appointment from an eligible list *and is rejected during the probationary period in that position, shall have the right to be restored to a position in the class and department in which he/she had status*. If an employee refuses such restoration, he/she shall be separated from City service following rejection.  An employee so separated shall not have a right to placement on a layoff list.[21]

17.061 - PROCEDURES ON APPEALS. *Any employee who after satisfactorily completing his probationary period of service*, is dismissed, demoted, or suspended for more than ten (10) calendar days in any one year, may, within thirty (30) calendar days after such dismissal, demotion, reduction in pay or suspension, *appeal to the Commission* for review thereof. Every appeal shall be heard promptly. Upon such review, both the appealing employee and the appointing authority involved shall have the right to be heard publicly and to present evidence; but technical rules of evidence shall not apply. The findings and decisions of the Commission shall be in writing and shall be certified to the Director. On the day the findings and decisions of the Commission are entered a copy thereof shall be mailed to the appellant by ordinary U.S. mail, postage prepaid, to the address furnished in the appeal or stated by him of record at the hearing, and to his attorney of record if he was represented before the Commission.[22]

23.033 - A performance report must be filed *for each permanent* Civil Service employee at least once in every calendar year within 10 days following the date on which such annual performance ratings are due as determined by the Director.[23]

### Mr. Mills administratively appeals the City's decision.

On January 8, 2019, Mr. Mills appealed the City's decision to its Civil Service Commission under Civil Service Regulation § 17.061.[24] The Civil Service Commission responded to Mr. Mills's appeal on February 6, 2019 advising: "You have appealed under Civil Service Regulation 17.061 from a demotion to the position of Laborer. However, Office of Human Resources records show that you were not demoted but were rejected during the probationary period from the position of Streets Crew Chief 2, effective 1/7/2019, and restored to the position in which you had permanent Civil Service status pursuant to Regulation 15.042.  In accordance with Civil Service Regulation 14.042, an employee who is rejected during the probationary period does <u>not</u> have the right to appeal to the Civil Service Commission against such action. Therefore, the Commission is without jurisdiction to hold a hearing on this matter. Accordingly, your appeal is rejected."[25]

Mr. Mills then contacted District Council 33 to file a grievance on his behalf against the City, but District Council 33 refused to do so.[26]

### Mr. Mills sues the City and AFSCME District Council 33.

On December 31, 2019, Mr. Mills sued the City and District Council 33 in the Philadelphia Court of Common Pleas.[27] After removal and through his amended complaint, Mr. Mills alleges the City's decision to remove his from the Crew Chief probationary position and reject his administrative appeal is arbitrary, capricious, and discriminatory.[28]  He does not allege the basis of the discrimination.  He contests the fact basis of the City's decision, alleges the City violated its Civil Service Regulations, retaliated against him, and demoted him in favor of a friend of Mr. Moore's and the uncle of a fellow supervisor, all of which deprived him due process in his

constitutionally-protected property right in the Crew Chief position as well as violated his equal protection rights.[29]

Mr. Mills brings five legal claims against the City: (1) Civil Service Regulation 14.042 on its face deprived him of his property right in the Streets Crew Chief II position without due process under the Fourteenth Amendment; (2) the City singled out Mr. Mills for harassment in its decision to reject him during probation for the Streets Crew Chief II position and treated him differently than other similarly situated probationary employees in violation of the equal protection clause of the Fourteenth Amendment; (3) Civil Service Regulation 14.042 as applied to Mr. Mills deprived him of his property right in the Streets Crew Chief II position without due process under the due process clause of the Fourteenth Amendment; (4) Civil Service Regulations 14.042, 15.042, and 17.061 "in combination as applied to probationary employees" on their face deprived him of his property interest in the Streets Crew Chief II position without due process under the Fourteenth Amendment; and (5) Civil Service Regulations 14.042, 15.042, and 17.061 "in combination as applied to" Mr. Mills deprived him of his property interest in the Streets Crew Chief II position without due process under of the Fourteenth Amendment.

## II.    Analysis[30]

The City moves to dismiss Mr. Mills's amended complaint arguing: (1) the four due process claims must be dismissed because, as a matter of law, there is no constitutionally protected property interest in the probationary position; and (2) the equal protection claim must fail because Mr. Mills fails to allege membership in a protected class and the City's favorable treatment of non-protected class members.[31]

**A.    The due process claims fail because Mr. Mills does not have a property interest in the Streets Crew Chief II position during the probationary period.**

Four of Mr. Mills's five claims against the City are based on a due process theory: a facial and "as applied to" challenge to Civil Service Regulation 14.042; an "as applied to probationary employees" challenge to Civil Service Regulations 14.042, 15.042, and 17.061; and an "as applied to" him challenge to Civil Service Regulations 14.042, 15.042, and 17.061.

The City does not address Mr. Mills's "as applied" and facial challenges to the Civil Service Regulations, focusing instead on the threshold issue of whether Mr. Mills has a constitutionally protected property interest in his promotion which could allow him to bring a due process claim. The City argues Mr. Mills does not have a constitutionally protected property interest in his promotion during the probationary period and moves to dismiss on this basis.

The Due Process Clause of the Fourteenth Amendment provides no state "shall … deprive any person of life, liberty, or property, without due process of law; …."[32] To state a procedural due process claim, Mr. Mills must allege (1) the state deprived him of a protected interest in life, liberty, or property and (2) the deprivation occurred without due process of law.[33] Mr. Mills argues he has a constitutionally protected interest in his promoted position notwithstanding his probationary status and the City deprived him of due process because the Civil Service Regulations are constitutionally infirm both on their face and as applied to him.

"To analyze a claim for procedural due process, a court 'must first determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment.'"[34] The City argues we must dismiss the due process claims because Mr. Mills cannot meet the first element—he does not have a property interest in the Streets Crew Chief II position as a probationary employee.

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."[35]  "To have a property interest in a job, however, a person must have more than a unilateral expectation of continued employment; rather, [he] must have a legitimate entitlement to such continued employment."[36]

Under Pennsylvania law, "[e]mployment …, including government employment, is generally at-will unless otherwise provided by contract or statute."[37]  Probationary employees do not have a property interest in employment.[38]  Viewing Mr. Mills's amended complaint in the light most favorable to him, he fails to plausibly state a protected property interest in his probationary position as a Crew Chief.

Mr. Mills concedes the City promoted him to Streets Crew Chief II on October 4, 2018; his probationary period ran for six months to April 8, 2019; Mr. Moore told Mr. Mills on December 4, 2018 he intended to recommend "rejected during probation"; and formally notified him of his demotion on January 3, 2019.[39]  Section 14.01 of the City's Civil Service Regulations provides for a six-month probationary period. Section 14.04 provides "[a]t any time during the probationary period, the appointing authority, or his/her designated representative, with the approval of the Director, may discharge or demote a probationary employee, if said appointing authority, or his/her designated representative, determine that such employee is unable or unwilling to perform his/her duties satisfactorily …" Mr. Mills alleges "nothing more than a 'unilateral expectation of continued employment,' which is insufficient to state a protected property interest" in the position of Streets Crew Chief.[40]

Mr. Mills does not deny his status as a probationary employee after his promotion to Streets Crew Chief II. He argues instead the case law cited by the City does not support its position because his employment continued beyond the probationary period.[41] Mr. Mills cites one case from forty years ago—*Whyte v. City of Scranton*—to support his position.[42]

In *Whyte*, two "reserve patrolmen" challenged the City of Scranton's termination of their employment. The officers began employment as "reserve patrolmen" and worked in that capacity until the city transferred the officers to its payroll as "regular patrolmen."[43] Officers promoted from "reserve patrolmen" to "regular patrolmen" serve for a three-month probationary period before the promotion becomes final.[44] The city terminated the officers on the last day of the probationary period. The officers argued they received *de facto* promotions when the city transferred them from "reserve" to "regular" patrolmen and challenged their terminations seeking to recover fringe benefits they believed they were entitled to as "regular" patrolmen. The trial court dismissed their complaint and the officers appealed to the Pennsylvania Commonwealth Court.

The Commonwealth Court affirmed the trial court's dismissal of the officers' claim. It found, even if the transfer on the city's payroll constituted a promotion, the officers did not serve the probationary period.[45] The Commonwealth Court found "[e]mployees may be evaluated during [the probationary period] and, if their services are unsatisfactory, their employment may be terminated. The termination of employment may take place at any time during the period, including the last day."[46] Interpreting the phrase "having served their probationary period," the court concluded "if the employment continues beyond the last day of the period, then the promotion will be deemed permanent."[47] The court concluded the officers "could have attained a *de facto* promotion … only if they continued to be employed on [the day after the three-month

9

period expired]. Instead, the [c]ity properly terminated them on the last day of the probationary period" and any subsequent reemployment by the city "is irrelevant to the present case."[48]

Mr. Mills argues *Whyte* holds a probationary employee whose employment continues beyond the last day of a probationary period secures a property interest in the probationary position and contends "this is precisely the situation here." We disagree.  Mr. Mills judicially admits the City promoted Mr. Mills to Streets Crew Chief II on October 4, 2018; he began working in that position on October 10, 2018; the six-month period of probation ran until April 8, 2019; Mr. Moore told Mr. Mills on December 4, 2018 he intended to recommend Mr. Mills be "rejected during probation"; Mr. Moore signed the Rejection During Probation document on December 20, 2018; and the City issued a Rejection Notice During Probationary Period on January 3, 2019.[49]  Mr. Mills did not serve the probationary period.

After his rejection during the probationary period, the City restored Mr. Mills to his previous position as a laborer.  Mr. Mills now argues because he continued to be employed by the City after April 8, 2019 in the laborer position, he has a property interest in the Streets Crew Chief II position.  The Commonwealth Court in *Whyte* does not support this proposition. Mr. Mills does not provide us with authority supporting the theory restored employment in a pre-promotion position, after being rejected from the promoted position ***during the probationary period***, creates a property interest in the promoted position. The Commonwealth Court's decision in *Whyte* stands for just the opposite; the court held if the officers continued to work one day after the three-month probationary period, they would have obtained a promotion. The city of Scranton instead terminated both officers on the last day of the probationary period and, thus, they did ***not*** secure the promotion.

If we were to accept Mr. Mills's interpretation of the Civil Service Regulations, any employee receiving a promotion but whose performance issues as determined by the City required a rejection during the probationary period would have a property right in a promotion he never obtained. This would render the entirety of Chapter 14 of the City's Civil Service Regulations a nullity and produce absurd results. There is no basis for such a result.

Mr. Mills additionally argues, unlike the officers in *Whyte*, he uniquely alleges the City violated Section 14.04 of the Civil Service Regulation providing, in part, "[a]t any time during the probationary period, the appointing authority, or his/her designated representative, with the approval of the Director, may discharge or demote a probationary employee, if said appointing authority, or his/her designated representative, determine" (1) "that such employee is unable or unwilling to perform his/her duties satisfactorily," *or* (2) "that his/her habits and dependability do not merit his/her continuance in the City service", *or* (3) "that information revealed during the pre-employment background investigation requires removing the employee from the position."

Mr. Mills contends Mr. Moore "and/or James made no such findings or determination to justify [his] demotion, or, in the alternative, the findings or determinations they made were not supported by the facts."[50] Mr. Mills argues at the motion to dismiss stage, we "cannot assume that the City had a legitimate basis or properly followed its own regulations in arriving at a determination that it now relies upon to argue that Mr. Mills has no constitutional right to protect that it could have violated. The circumstances of his demotion will be the subject of discovery, and the City is free to renew its efforts to dismiss his claims on a motion for summary judgment."[51]

Mr. Mills seemingly confuses the issues. The issue is whether Mr. Mills has a constitutionally protected right in his promotion. As a matter of law, he does not because, on the face of the amended complaint, the City rejected his promotion during the probationary period.

He may have fact findings possibly subject to a timely appeal in state court, but he does not plead a property interest subject to constitutional due process protections in this Court.

Further, Mr. Mills's argument "Moore and/or James" failed to make "findings or determinations to justify [his] demotion" is belied by his amended complaint and its exhibits.  Mr. Mills alleges Mr. Moore held two hearings with Mr. Mills and two District Council 33 Shop Stewards: the first, regarding the November 21, 2018 safety issue and recommended a one-day suspension, and the second, regarding the "failure to properly manage charge."[52] Mr. Mills attaches to his amended complaint documents showing disciplinary action, rejection during probation, and the rejection notice during probationary period signed by Mr. Moore, the Deputy Commissioner, Commissioner, and the Deputy Personal Director of the Streets – Sanitation Department.[53] Sections 14.041 sets out the "Rejection Procedure" to be followed, and the exhibits to the amended complaint confirm the City followed the "Rejection Procedure."

Mr. Mills simply disagrees with the City's determination, arguing its decision is "not supported by the facts."  But as a probationary employee in the Streets Crew Chief II position, Mr. Mills served as an at-will employee.  Under Pennsylvania law, "employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason" and this general rule is "not abrogated just because the employee is a governmental worker since one does not have a *per se* right in governmental employment."[54]  Even if the City's determination to reject Mr. Mills for the promotion during the probationary period is "not supported by the facts," the City did not run afoul of the Fourteenth Amendment's due process guarantee because he has no property interest in the promotion during the probationary period.[55]

We grant the City's motion and dismiss with prejudice Mr. Mills's due process claim. Generally, when a complaint is dismissed for failure to state a claim under Rule 12(b)(6) a plaintiff

should be granted leave to amend the complaint unless amendment would be futile.[56]  Because the City demoted Mr. Mills during the probationary period of his demotion and, as a matter of law, does not have a constitutionally protected property right, an amendment will be futile.[57]

**B.      Mr. Mills fails to state an equal protection claim.**

Mr. Mills lastly alleges the City violated the Equal Protection Clause of the Fourteenth Amendment when it "singled [him] out for harassment in connection with the decision to recommend that he be rejected during probation for the Streets Crew Chief II position" and the City "treated [him] differently from other similarly situated probationary employees; its treatment was intentional; and there was no rational basis for the difference in treatment."[58]

The City argues Mr. Mills fails to allege (1) discrimination on the basis of membership in a protected class; and, (2) the City treated similarly situated non-members of the protected class more favorably or the adverse job action occurred under circumstances giving rise to an inference of discrimination.

Mr. Mills responds the City "is confused as to the nature" of his equal protection claim. He contends, although he is African-American, he is ***not*** asserting a race discrimination employment claim, but "[r]ather is asserting a claim of unequal treatment, regardless of race, with respect to his demotion. Thus, traditional equal protection analysis applies, as opposed to the analysis required for claims of employment discrimination motivated by race."[59]  Mr. Mills does not provide us authority regarding the "traditional equal protection analysis," and summarily concludes he sufficiently states a claim for a violation of the equal protection clause.

The Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."[60]  "This is essentially a direction that all persons similarly situated should be treated alike."[61]  In the employment context, the "Equal Protection

Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently."[62]

To state an equal protection claim, Mr. Mills must allege he is "(1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class."[63] Mr. Mills must also allege "'the existence of purposeful discrimination.'"[64]

The City applies Title VII's analysis to Mr. Mills's equal protection claim. Applying the *prima facie* elements of an employment discrimination claim under *McDonnell Douglas,*[65] the City argues Mr. Mills must allege (1) [he] belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) either similarly situated non-members of the protected class were treated more favorably or the adverse job action occurred under circumstances that give rise to an inference of discrimination.[66] The City argues Mr. Mills failed to allege the first and fourth elements.

Mr. Mills contends he is not alleging discrimination based on race. Indeed, we see no allegations from which we can infer he is a member of a protected class and the City treated him differently based on his membership in a protected class. Taking Mr. Mills's assertion "the City apparently is confused as to the nature of [his equal protection] claim and his unequivocal statement "he is not asserting a race discrimination employment claim," we grant the City's motion to dismiss the equal protection claim. We will allow Mr. Mills leave to amend his complaint to allege membership in a protected class (presumably other than race based on his judicial admission) and the City's disparate treatment of him based on his status in a protected class, if he can do so under Federal Rule of Civil Procedure 11.

Abandoning a race based equal protection theory, Mr. Mills tells us he "is asserting a claim of unequal treatment, regardless of race, with respect to his demotion. Thus, traditional equal protection analysis applies, as opposed to the analysis required for claims of employment discrimination motivated by race." Again, he does not tell us what he believes is the "traditional equal protection analysis." "The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class."[67]

Mr. Mills offers another alternative for our analysis: he is bringing a "class-of-one" equal protection claim. Liberally construing his amended complaint, Mr. Mills alleges the City intentionally treated him differently from other similarly situated probationary employees and there is no rational basis for the difference in treatment.[68] This allegation parrots the Supreme Court in *Village of Willowbrook* recognizing "successful equal protection claims brought by a 'class of one,' [sic] where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[69] Under a class-of-one theory, "a plaintiff may assert an equal protection claim even absent protected class status by alleging irrational and intentional differential treatment in comparison to similarly situated individuals."[70]

But this class-of-one theory does not apply to Mr. Mills as a public employee. The Supreme Court made clear in *Engquist v. Oregon Department of Agriculture* "the class-of-one theory of equal protection has no application in the public employment context."[71] The Supreme Court in *Engquist* explained "Thus, the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection

concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action."[72]

As a matter of law, Mr. Mills's equal protection claim under a class-of-one theory in the context of his public employment fails. We grant the City's motion to dismiss with prejudice. Any amendment on a class-of-one theory is futile.

## III.    Conclusion

We dismiss with prejudice Mr. Mills's due process claims and class-of-one equal protection claim against the City. We dismiss without prejudice Mr. Mills's equal protection claim to allege, if he can do so under Rule 11, he is a member of a protected class, similarly situated to members of an unprotected class, and the City treated him differently than members of the unprotected class.

---

[1] ECF Doc. No. 5 at ¶ 8.

[2] *Id.* at ¶ 9.

[3] *Id.* at ¶ 14.

[4] *Id.*

[5] *Id.* at ¶¶ 12, 13, 16.

[6] *Id.* at ¶ 17.

[7] *Id.*

[8] *Id.* at ¶ 18.

[9] *Id.* at ¶ 17.

[10] *Id.* at ¶ 19. Mr. Mills now alleges the "failure to properly manage" charge is unsubstantiated. *Id.*

[11] *Id.* at ¶ 20.

[12] *Id.* Paragraph 20 begins by identifying Mr. Moore as the individual who told Mr. Mills, on December 4, 2018, of the recommended "rejected during probation," but later in the paragraph refers to "Jones." Given the context, we assume Mr. Mills intended Mr. Moore, not Ms. Jones.

[13] *Id.* at ¶ 21. Again, Mr. Mills identifies "Jones" as having signed the form. But the form attached to the complaint shows Mr. Moore signed the form.

[14] *Id.* at ¶ 22.

[15] *Id.* at ¶ 22 and Exhibit "D," ECF Doc. No. 5-1 at 9 (using the pagination assigned by the CM/ECF system).

[16] *Id.* at ¶ 25.

[17] Philadelphia Home Rule Charter at § 1.01 (Jan. 22, 2020).

[18] Philadelphia Civil Service Regulations at § 14.01 (Jan. 22, 2020) (emphasis added).

[19] Philadelphia Civil Service Regulations § 14.04 (emphasis added).

[20] Philadelphia Civil Service Regulations § 14.042 (emphasis added).

[21] Philadelphia Civil Service Regulations § 15.042 (emphasis added).

[22] Philadelphia Civil Service Regulations § 17.061 (emphasis added).

[23] Philadelphia Civil Service Regulations § 23.033 (emphasis added). Mr. Mills alleges the due process violations include Mr. Moore's failure to provide an annual performance report under section 23.033 depriving him of the opportunity to take corrective action. ECF Doc. No. 5 at ¶ 31.d. Because we find Mr. Mills does not have a constitutionally protected property interest in his promotion during the probationary period, we do not address the merits of this argument.

[24] ECF Doc. No. 5 at ¶ 26.

[25] *Id.* at ¶ 27 and Exhibit "E," at ECF Doc. No. 5-1 at 11(emphasis in original).

[26] *Id.* at ¶¶ 29-30.

[27] ECF Doc. No. 1, Notice of Removal at ¶ 1. To date, District Council 33 has not been served. On April 8, 2020, Mr. Mills filed an Affidavit of Service on "AFSCME District Council 22"—a non-party to this action. See ECF Doc. No. 4. In response to the City's motion to dismiss, Mr. Mills stated he intended to file a second amended complaint solely to identify AFSCME Local 427, not

AFSCME District Council 33 as the proper defendant.  ECF Doc. No. 7, n.1.  Mr. Mills then filed a second amended complaint changing the caption without first seeking leave of court.  ECF Doc. No. 8. We struck the second amended complaint as non-compliant with Federal Rule of Civil Procedure 15(a) and reminded the parties they could stipulate to further amend or change the name of a defendant.  ECF Doc. No. 9. The parties filed a stipulation "Defendant AFSCME District Council 33 in the Amended Complaint shall be changed to Defendant AFSCME Local 427 in the caption of this action and throughout the Amended Complaint."  ECF Doc. No. 10.  The labor union does not yet have notice and we allow Mr. Mills to timely file a second amended complaint to, among other things, identify the correct defendant and serve it with a timely summons.

[28] ECF Doc. No. 5 at ¶ 30.

[29] *Id.*

[30] When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[31] ECF Doc. No. 6.

[32] U.S. CONST. amend. XIV, § 1.

[33] *Burns v. Pennsylvania Dep't. of Correction*, 544 F.3d 279, 285 (3d Cir. 2008) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). To the extent Mr. Mills intended to bring a substantive due process claim, he must, like a procedural due process claim, "establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000). "Whether a property interest is protected for purposes of *substantive due process* is a question that is not answered by reference to state law. Rather, for a property interest to be protected for purposes of substantive due process, it must be 'fundamental' under the United States Constitution." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234, n.12 (3d Cir. 2006) (citing *Nicholas*, 227 F.3d at 140) (emphasis in the original). Our Court of Appeals "has held explicitly that public employment is not a fundamental right entitled to substantive due process protection." *Id.* (citing *Nicholas* at 142-43). We understand Mr. Mills to make a procedural due process claim

because he concedes "whether a protectible property interest exists is a question of state law" and, as discussed, state law determines constitutionally protected property interests for a procedural due process claim while federal law determines the property interest in a substantive due process claim. ECF Doc. No. 7. We thus apply a procedural due process analysis. But even if he somehow also claims substantive due process, he does not state such a claim under *Hill*.

[34] *Montanez v. Sec'y Pennsylvania Dept. of Corr.*, 773 F.3d 472, 482 (3d Cir. 2014) (quoting *Evans v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir.2011) (internal quotations omitted)).

[35] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). *See also Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 137-38 (3d Cir. 2017) (applying Pennsylvania law to determine whether plaintiff had a constitutionally protected property interest in his job with a regional education service agency).

[36] *Roth*, 408 U.S. at 577.

[37] *Grabiak v. Pennsylvania State Police*, 276 F. App'x 210, 212 (3d Cir. 2008) (citing *Pipkin v. Pennsylvania State Police*, 693 A.2d 190, 191 (Pa. 1997)). *See also Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) ("the decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer") (citing *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988)).

[38] *Bartal v. Borough of Laureldale*, 515 F.Supp.2d 556, 562 (E.D. Pa. 2007) (citing *Olson v. Borough of Avalon*, 811 A.2d 66, 71 (Pa. Commw. Ct. 2002)).

[39] ECF Doc. No. 5 at ¶¶ 8-9, 20, 22.

[40] *Liban v. McCarty*, No. 17-926, 2017 WL 3967783, at *5 (E.D. Pa. Sept. 8, 2017) (quoting *Elmore*, 399 F.3d at 282).

[41] ECF Doc. No. 7.

[42] 423 A.2d 473 (Pa. Commw. Ct. 1980).

[43] *Whyte*, 423 A.2d at 474.

[44] *Id.*

[45] *Id.* at 475.

[46] *Id.*

[47] *Id.*  The Commonwealth Court interpreted a section of 53 P.S. § 30454 pertaining to the civil service status of municipal employees of the cities of the second class A. Section 30454 provides: "On and after the date of passage hereof, municipal employes [sic] of the cities of the second class

A listed in the competitive and noncompetitive classes on the roster of the civil service commission and having service [sic] their probationary period shall be considered as having the status of civil service employees." P.S. § 30454.

[48] *Whyte*, 423 A.2d at 475.

[49] ECF Doc. No. 5 at ¶¶ 8,9, 20-22.

[50] *See* ECF Doc. No. 5 at ¶ 31.b. The amended complaint does not identify "James." There is a "James Moore" and a "Wanda Jones."  We do not know who Mr. Mills intended to identify here.

[51] ECF Doc. No. 7 at 3.

[52] ECF Doc. No. 5 at ¶¶ 17, 19-20.

[53] ECF Doc. No. 5-1 at Exhibits "A"–"D."

[54] *Pipkin*, 693 A.2d at 191 (quoting *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995)).

[55] *Tundo v. Cnty. of Passaic*, 923 F.3d 283, 287-88 (3d Cir. 2019).

[56] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir.2002).

[57] *O'Donnell v. Simon*, 362 F. App'x 300, 305 (3d Cir. 2010) (affirming dismissal of attorney's claim she had a constitutionally protected interest in her employment).

[58] ECF Doc. No. 5 at ¶¶ 41-42.

[59] ECF Doc. No. 7 at 3.

[60] U.S. CONST. amend. XIV, § 1.

[61] *Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (quoting *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005)).

[62] *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 605 (2008).

[63] *Raven v. City of Philadelphia*, No. 15-4146, 2017 WL 930316, at *3 (E.D. Pa. Mar. 8, 2017) (quoting *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015), *aff'd sub nom. A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016); *Judge v. Shikellamy Sch. Dist.*, 135 F.Supp.3d 284, 296 (E.D. Pa. 2015) (citing *Barnett v. Sch. Dist. of Lancaster*, No. 14-2414, 2015 WL 1312730, at *3 (E.D.Pa. Mar. 24, 2015)).

[64] *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)).

---

[65] *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973).

[66] ECF Doc. No. 6 at 8.

[67] *Judge*, 135 F.Supp.3d at 296 (quoting *D'Altilio v. Dover Twp*., No. 06–1931, 2007 WL 2845073, at *8 (M.D.Pa. Sept. 26, 2007)).

[68] ECF Doc. No. 5 at 42.

[69] *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[70] *Judge*, 135 F.Supp.3d at 297.

[71] *Engquist*, 553 U.S. at 607.  *See also Cuff v. Camden City Sch. Dist.,* 790 F. App'x 413, 419 (3d Cir. 2019) (applying *Engquist*, affirming dismissal of equal protection claim based on a class-of-one theory in the government employer-employee context); *Berkery v. Wissahickon Sch. Dist. Bd. of Dir.*, 628 F. App'x 109, 112 (3d Cir. 2015) (same).

[72] *Engquist*, 553 U.S. at 605.